BRISTOL et al. v. SCRANTON et al.

(Circuit Court, W. D. Pennsylvania. June 19, 1893.)

No. 35.

CORPORATIONS—CONSOLIDATION—PERSONAL AGREEMENT OF OFFICERS—LIABILITY TO STOCKHOLDERS.

Pending negotiations for the consolidation of two steel companies, L. and S.,—which negotiations on the part of company S. were conducted by its president and vice president,—company L. insisted, as a condition precedent to the consolidation, that said officials enter into a personal covenant not to engage, individually, during the period of 10 years, in the manufacture of steel in any competing works then existing within a defined territory, for a money compensation to be paid them by company L., and, simultaneously with the execution by the two companies of the preliminary agreement of consolidation, such individual contract was entered into. The consolidation having been carried out, the money compensation was paid by company L. to said officials. The amount so paid them was not a bonus, but a fair equivalent for their personal covenant. It constituted no part of the consideration to which company S. was entitled, and the payment took nothing from that company. The transaction was free from actual fraud. The terms of consolidation were favorable to company S., and were approved by all its stockholders. Upon a bill filed by certain stockholders to compel said officials to account to company S. for the amount so paid to them:

*Held,* that as the transaction was honest in fact, and the plaintiffs had elected to retain the benefits of the consolidation, which was unattainable without the personal covenant of the defendants, neither company S. nor the complaining stockholders had any equity to take from the defendants the price of the personal covenant by which they were bound.

In Equity. Bill by Louis H. Bristol and others, stockholders of the Scranton Steel Company, against William Walker Scranton,

Walter Scranton, directors of the Scranton Steel Company, and the said company, for an accounting by defendants Scranton. Bill dismissed.

Henry Stoddard, Samuel Dickson, and Richard C. Dale, for complainants.

D. T. Watson and Johns McCleave, for defendants.

Before ACHESON, Circuit Judge, and BUFFINGTON, District Judge.

ACHESON, Circuit Judge. Under and in conformity with the terms of articles of agreement dated January 9, 1891, between the Lackawanna Iron & Coal Company and the Scranton Steel Company, corporations of the state of Pennsylvania engaged in the manufacture of steel at the city of Scranton, the business interests and plants of the two companies were consolidated, and transferred to a new corporation, styled the Lackawanna Iron & Steel Company. Contemporaneously with the execution of the preliminary agreement for this consolidation, a written agreement, bearing date January 9, 1891, between the Lackawanna Iron & Coal Company, party of the first part, and William Walker Scranton and Walter Scranton, parties of the second part, was executed, whereby it was agreed between these parties:

"First. That upon the complete execution of said contract between the Lackawanna Iron and Coal Company and the Scranton Steel Company the party of the first part will assign, transfer, and deliver to the parties of the second part $350,000.00 of the mortgage bonds of the Lackawanna Iron and Steel Company, described and provided for in said contract. Second. And in consideration thereof the said parties of the second part agree that they will not, nor will either of them, engage, directly or indirectly, in the manufacture of steel in any new competing works, not now existing in any of the northern states of the United States, including Maryland, Virginia, and West Virginia, for a term of ten years from and after the complete execution of said contract; that they will at once procure and deliver to said iron company the assent of the Scranton Gas and Water Company to the assignment of the contracts with that company, specified and described in said contract between the Lackawanna Iron and Coal Company and the Scranton Steel Company."

William W. and Walter Scranton are brothers. From the organization of the Scranton Steel Company, in 1881, they were directors of that corporation; and the former was the president, and the latter the vice president, of the company. The negotiations for the consolidation of the Scranton Steel Company with the Lackawanna Iron & Coal Company were conducted on the part of the former company by them, but principally by William. At the time of the consolidation, William held 1,845 shares of the stock of the Scranton Steel Company, and Walter held 920 shares.

This is a bill by Louis H. Bristol and others, stockholders of the Scranton Steel Company, holding 1,575 shares out of the total capital stock of 7,500 shares, against William Walker Scranton and Walter Scranton and the Scranton Steel Company, praying that William W. and Walter Scranton may be decreed to account for and pay over to the Scranton Steel Company the $350,000 of

bonds which they received from the Lackawanna Iron & Coal Company under the agreement last above recited, or the proceeds· or value thereof.     The bill charges that, in the year 1890, William W. and Walter Scranton devised and attempted to carry out a scheme to sell the stock owned by them and some of their immediate relatives and dependents, constituting a majority interest in the stock of the Scranton Steel Company, to rival concerns, so as to leave the stock of the plaintiffs and others a minority interest, subject to the control of such majority interest, in the hands of hostile competitors, and that accordingly they offered to sell 4,000 shares of stock for $1,000,000, and that this scheme and attempt were kept secret and hid from the plaintiffs.     But this charge is not sustained by the proofs.     It appears that an overture for the purchase of a controlling interest of the stock of Scranton Steel Company was made to the Scrantons by persons connected with the Lackawanna Iron & Coal Company, but the answer of the Scrantons thereto was on behalf of the whole body of stockholders of the Scranton Steel Company, and in the interest of all alike, according to their several holdings.

With reference to the proofs, the material allegations of the bill are as follows:

"And your orators further show that as part and parcel of the said arrangement by which the consolidation of the business interests and plants of said two corporations was to be effected, and the plant of said Scranton Steel Company was to be transferred to a new and single corporation, known as the Lackawanna Iron & Steel Company, said William Walker Scranton and Walter Scranton, while acting in said negotiations for and in behalf of said Scranton Steel Company, and as the directors and agents thereof, in violation of the duty which, as said directors and agents, they owed to said Scranton Steel Company, and to the stockholders thereof, including your orators, conspiring and confederating together to receive for themselves large sums of money or securities or bonds through and by means of the sale, conveyance, and transfer of, substantially, all the plant and property of said Scranton Steel Company to said proposed new corporation, secretly, and without the knowledge, assent, or concurrence of the other stockholders of said Scranton Steel Company, or any of them, stipulated that the sum of three hundred and fifty thousand dollars, in bonds of said new company, secured upon the property of said new company, should, upon the consummation of said consolidation, be paid to them, personally and individually, and for their own personal use and benefit, by the Lackawanna Iron & Coal Company, which stipulation and agreement was in the mean time agreed to be kept secret by such officers of said Lackawanna Iron & Coal Company, at the instance and request of said William Walker Scranton and Walter Scranton."

After reciting the consummation of the consolidation, and the delivery by the Lackawanna Iron & Coal Company to the Scrantons of said bonds, the bill proceeds:

"And your orators allege that the obtaining and procurement of said bonds by the said William Walker Scranton and Walter Scranton, for their personal use, benefit, and behoof, was in fraud of the rights of said Scranton Steel Company and of your orators, as stockholders thereof, and that in truth and in fact said bonds were, in substance, part and parcel of the consideration paid by the Lackawanna Iron & Coal Company for the transfer to said new company of the manufacturing plant of said Scranton Steel Company, pursuant to the terms of said written agreement, and that said bonds be-

long, in equity and good conscience, not to said William Walker Scranton and Walter Scranton, but to the said Scranton Steel Company and to the stockholders thereof, ratably, in proportion to their several holdings of the stock of that company."

Then, after stating that the plaintiffs are informed that the Scrantons allege that said securities were delivered to and received by them in consideration, upon their part, not to engage in business individually, or as officers of any other corporation, in competition with the purchaser, the bill declares:

"But your orators charge and aver that because and by virtue of the relation which the defendants then held to said Scranton Steel Company, of which they were then officers and agents, they were disqualified and prevented from taking or holding such personal benefit or advantage, and that the securities and bonds so received did in fact constitute a part of an entire consideration for the property and assets of said Scranton Steel Company, conveyed as aforesaid, and it was the duty of the defendants to turn over and account for the same, and that in fact said securities were given to and received by the defendants because they were officers and agents, as aforesaid, of said Scranton Steel Company."

In their answer, William Walker Scranton and Walter Scranton specifically deny every charge and averment of fraud or bad faith contained in the bill, and they allege that the bonds in question were paid to and received by them in good faith, in consideration of a personal covenant upon their part, whereby they bound themselves not to engage in the manufacture of steel in any new competing works, not then existing in any of the northern states of the United States, including Maryland, Virginia, and West Virginia, for a term of 10 years; that this covenant was demanded from them by the Lackawanna Iron & Coal Company, as a condition precedent to the consolidation, in the interest of the stockholders of that company, and also for the benefit of the new consolidated company; that the amount paid them was in no sense a bonus, but was a fair equivalent for their covenant; that the bonds which they received were altogether the property of the Lackawanna Iron & Coal Company; that they were no part of the consideration payable to the Scranton Steel Company for the consolidation, and the payment thereof to the Scrantons took nothing from that company; that the consolidation agreement and the agreement between the Lackawanna Iron & Coal Company and the Scrantons were two distinct contracts, independent of each other, except in this: that without the personal covenant of the Scrantons, which the Lackawanna Iron & Coal Company exacted, the consolidation could not have been effected; that the individual contract with the Scrantons was not secretly made, or the fact concealed; and that the same was explained to the stockholders of the Scranton Steel Company at the meeting held on February 6, 1891, which ratified the consolidation agreement.

It appears from the pleadings and proofs that at a meeting of the stockholders of the Scranton Steel Company on May 18, 1891, convened, at the instance of the plaintiffs, or some of them, to determine the course of action with respect to this matter, 4,818 shares of stock voted against bringing suit against the Scrantons

to recover the bonds, and 2,320 shares voted in favor of bringing such a suit. This majority of the stock vote, however, included the shares of William W. and Walter Scranton, amounting, together, to 2,765 shares.

At the outset of this discussion, it is to be noted that we regard it as a matter of no moment that the personal covenant of the Scrantons was taken to the Lackawanna Iron & Coal Company, instead of to the consolidated company, as the covenant is undoubtedly enforceable, and inures to the benefit of the new company. Nor, in view of the circumstances connected with the preparation and execution of the paper containing that covenant, do we attach any significance to its preamble or recitals. That contract was drafted by the counsel of the Lackawanna Iron & Coal Company in the city of New York, and was accepted by the Scrantons as written. The clause touching the assent of the Scranton Gas & Water Company to the assignment of certain contracts was wholly unnecessary, for the Scrantons had already procured that assent. Under the evidence, it is entirely clear that the real and only consideration for the bonds the Scrantons received was their individual covenant not to engage in new competing steel works within the named territory for the period of 10 years.

Upon the part of the Lackawanna Iron & Coal Company, the negotiations for the consolidation were conducted by E. T. Hatfield, the president, and Benjamin G. Clarke, the vice president, of that company. The plaintiffs called and examined Clarke. He testifies explicitly that the proposition to exclude the Scrantons, individually, from entering into competing business originated altogether with those representing the Lackawanna Iron & Coal Company, and was insisted on by that company as a condition of the consolidation. In the course of his examination in chief, speaking of the amount paid the Scrantons, he states:

"They at first asked a larger sum than was finally agreed upon, in consideration of the fact that we insisted on their staying out of business for a term of ten years, which he (William) thought was rather a hard thing, but he finally consented, in accordance with that agreement."

All this accords with the testimony on the part of the defendants; so that, upon the uncontradicted proofs, it must be accepted as a fact that the individual contract with the Scrantons was not sought or suggested by them, but originated with the Lackawanna Iron & Coal Company, and was insisted on by that company as a condition precedent to the proposed consolidation.

It is also a fact that the Scranton Steel Company had no beneficial interest in the $350,000 of bonds paid to the Scrantons. Those bonds were part of an issue of $600,000 by the consolidated company to the Lackawanna Iron & Coal Company. By the terms of the consolidation agreement the new company was to take the plant of the Scranton Steel Company incumbered by a mortgage for $600,000 and assume its payment, and for the purpose of equalization the new company was to issue bonds to the same amount to the Lackawanna Iron & Coal Company, secured by a mortgage

on its plant, and accordingly this was done. It is, then, plain that the bonds the Scrantons received for their personal covenant belonged exclusively to the Lackawanna Iron & Coal Company, which was free to dispose of them as it deemed best for the interest of its stockholders.

Mr. Clarke, testifying on behalf of the plaintiffs, states that what the Scranton Steel Company received, and the amount paid to the Scrantons, were two entirely separate considerations. All the positive evidence in the case is to the same effect. Having regard, then, to the direct proofs, together with all the collateral facts and circumstances, the fair conclusion, we think, is that the only connection between the two agreements was that the Lackawanna Iron & Coal Company made the personal covenant of the Scrantons a sine qua non to the consolidation.

Nor does it appear to us that the consideration to the Scranton Steel Company for the consolidation was diminished aught by reason of the other contract. It is, indeed, said that arrangements advantageous to that company were discarded because of the personal demands of the Scrantons. But, upon the most attentive reading and study of the proofs, we fail to discover a justification for such assertion. The basis for consolidation first discussed was the net earnings of the two companies for the previous four years, and this proposal came from William Walker Scranton. It was then, after he had made that proposal, that Hatfield first announced to him that his company would not consider any terms of consolidation unless the Scrantons, individually, would bind themselves to keep out of any new competing concern for a period of 10 years. William thereupon spoke of the hardship such a stipulation would impose upon him and his brother Walter, stating that he himself could not afford to go out of business for 10 years, which practically meant for life, as far as he was concerned, unless they would capitalize a fair salary at 5 per cent., and named as a compensation for each the sum of $240,000, which Hatfield said he thought was fair. Two or three days later, Mr. Hatfield reported to Mr. Scranton that his company was not willing to consolidate upon the basis of earnings, but no other objection was mentioned. Then Hatfield proposed a consolidation upon the basis of both companies putting in all their properties, the stock of the new company to be apportioned as follows: To the Scranton Steel Company, $750,000 of stock, and to the Lackawanna Iron & Coal Company $3,750,000 of stock. But no change was suggested as to the individual contract. With that proposition, Mr. Scranton expressed his satisfaction. Shortly afterwards, Mr. Hatfield stated to Mr. Scranton that his people wanted the Scranton Steel Company to retain its bills receivable, and discharge its bills payable. This modification was really favorable to the Scranton Steel Company, and Mr. Scranton promptly acceded to it. He then proposed that Messrs. Kingsbury, Wehrum and McKinney, old employes of the Scranton Steel Company, should be retained in the service of the new company, which Mr. Hatfield

thought was reasonable. No change with respect to the personal contract was yet suggested. Two days later, Mr. Hatfield reported to Mr. Scranton that his board had met, and that the whole thing was off, the points of objection, as he stated, being to the price named for the plant of the Scranton Steel Company, the dictation as to employes, and the sum asked by the Scrantons for their individual covenant. To obviate these objections the Scrantons offered to withdraw the suggestion as to employes, and to reduce their personal compensation to $125,000 each, but without avail. The negotiations for the time being were broken off, but upon the renewal thereof the terms of consolidation were settled eventually as expressed in the articles of agreement between the two companies. The sums to be paid for the individual covenant of the Scrantons were ultimately fixed at $200,000 for William, and $150,000 for Walter. The reason for the reduction in Walter's case was that the new consolidated company employed him as its sales agent in the city of New York for the period of five years at a yearly salary of $12,000. It is perfectly clear from the evidence that Walter was so employed only because he was esteemed a valuable man, and the new company wanted his services.

We are unable to perceive that in the course of the negotiations the Scrantons subordinated the interests of the Scranton Steel Company to their own private interests in any particular whatsoever. On the contrary, the evidence satisfies us that in "all things, both great and small," William Walker Scranton firmly asserted the rights of that company,—in some instances almost to the verge of stubbornness,—and with uniform success. That the consolidation, as effected, was highly advantageous to the Scranton Steel Company, is beyond contestation, under the proofs. The terms, as set forth in the written agreement, received the unanimous approval of the stockholders. Undoubtedly, consolidation upon those terms was greatly desired by the plaintiffs. Writing to William W. Scranton from New Haven, Conn., under date of January 22, 1891, Mr. Louis H. Bristol said: "I have explained, in more or less detail, the contemplated arrangement to our stockholders here, and they are all not only satisfied, but pleased." Under date of February 23, 1891, he wrote: "Up here, we shall all be much disappointed if consolidation should now fall through." Writing under date of March 11, 1891, he said: "I, as well as all the New Haven stockholders, am delighted to learn that the consolidation is now likely to be an accomplished fact." Nor has any stockholder of the Scranton Steel Company since objected to or regretted the consolidation as made. The truth is, the agreement which the Scrantons negotiated was a most favorable one for that company. Mr. Clarke, speaking from his subsequent knowledge, testifies that the Scranton Steel Company, unquestionably, was paid more than its plant was worth. There is no testimony to the contrary. It is possible that others might have done as well for the Scranton Steel Company as these defendants did, but it is entirely safe to say that none could have done better.

The plaintiffs insist that the compensation paid the Scrantons was unreasonable. But, if the bargain was honest in fact, it was for the Lackawanna Iron & Coal Company to determine the adequacy of the consideration which the Scrantons gave. It is, however, certain, from the evidence, that that company deemed it a matter of great pecuniary importance to its stockholders to get rid of the individual competition of the two Scrantons in new steel works. On the other hand, the Scrantons, and particularly William,—with whom it was a question of laying down his life work —regarded the covenant which was demanded of them as involving great personal sacrifice. Now, Henry Belin, Jr., who was a stockholder and an active director of the Scranton Steel Company, testifies that William W. Scranton informed him that "his going out of business was a condition of the negotiations," and advised with him as to "what he ought to get;" and Mr. Belin states: "I suggested to him that the way to arrive at it was to capitalize his salary. That would give him the figure he ought to sell out at." Mr. Belin seems to be a business man of large experience, and a thoroughly reliable witness. William had been receiving an annual salary, as manager of the Scranton Steel Company, of $7,500, with a small contingent additional percentage, based on net earnings. Walter was receiving from that company, as its sales agent, a yearly salary of $9,000, with a like arrangement as to net earnings. William had formerly received from the Lackawanna Iron & Coal Company a yearly salary, as manager, of $10,000. The uncontradicted evidence is that the ordinary yearly salaries for expert managers and salesmen of such steel works ranged from $12,000 to $20,000. Under the proofs, and in view of all the circumstances, we cannot declare that the sums paid to the Scrantons, respectively, for their covenant to keep out of competing business, were extravagant or unreasonable.

One other matter deserves mention here: The whole project of consolidation, including the personal contract, was distasteful to the Scrantons, especially to William, who down to the last moment, by the most determined efforts to secure the additional working capital the Scranton Steel Company so sorely needed, sought to avert the union of his company with its old rival, the Lackawanna Iron & Coal Company.

The allegation of the bill as to an agreement, at the instance of the Scrantons, that the individual contract with them should be kept secret, is not sustained by the proofs. If anything at all was said by the Scrantons upon the subject of secrecy, (which is denied,) Mr Clarke understood it only as a suggestion to withhold information from the public until the directors and stockholders of the respective companies had acted. In fact, previous to the meeting of February 6, 1891, William W. Scranton had freely mentioned the matter to at least the following named stockholders of the Scranton Steel Company, who have here so testified, viz.: Henry Belin, Jr., E. P. Kingsbury, Henry Wehrum, James A. Linen, John B. Smith, George B. Smith, and George L. Dickson; and it was known to, and openly dis-

cussed by, business men in the city of Scranton.   The minutes of
the meeting of the stockholders of the Scranton Steel Company
held on February 6, 1891, at which the consolidation agreement
was ratified, contain this entry:

"After a full explanation and understanding of the contract, the condition
and prospects of the steel rail trade in the east, and the announcement of the
fact the Lackawanna Iron and Coal Company had made it a condition of
the agreement that the president and vice president of this company should
agree not to engage in the manufacture of steel in any new competing works
in the northern states for a period of ten years, for which they were to re-
ceive a compensation, the meeting proceeded, in due form, to vote upon the
question."

The stockholders personally attending that meeting were W. W.
Scranton, Henry Belin, Jr., Alfred Hand, G. L. Dickson, Arthur
Scranton, E. P. Kingsbury, William T. Smith, and James A. Linen.
None of the plaintiffs were personally present.   Most of them had
sent their proxies to William W. Scranton, who voted their stock.
The votes cast in favor of the consolidation were 6,892, and none
against it.   Whether the amount of compensation was mentioned
by William at that meeting is open to question, under the testimony;
but certainly he announced all that is recorded on the minutes, and
the particulars seem to have been already known to all who were
there.   It was unfortunate, and we think a mistake, that the
Scrantons did not give the plaintiffs full information with respect
to their individual contract before the stockholders' meeting, but
in our judgment they are not justly chargeable with intentional
concealment.   Looking at the whole transaction in the light of·
all the evidence, our conclusion is that it was free from actual
fraud.   The contract between the Lackawanna Iron & Coal Com-
pany and the Scrantons, we are satisfied, was conceived, made, and
carried out in perfect good faith.

But it is contended, and many authorities supposed to sustain the
proposition are cited to show, that, aside altogether from the ques-
tion of positive fraud, and without regard to the actual motives
or intentions of the parties, the personal contract here made is
condemned by the policy of the law, which requires that the Scran-
tons should turn over to the Scranton Steel Company the bonds,
or their proceeds.   Is this position maintainable?   Undoubtedly,
the rule is that one acting in a representative or fiduciary capacity
is not allowed so to deal with the subject-matter of his agency or
trust as to benefit himself privately, and an agent or trustee who
thus makes a profit out of his agency or trusteeship must account
for the same to his principal or cestui que trust; and it may be
conceded that the rule applies, as a principle of public policy, with-
out regard to the actual fairness of the transaction, or the merits
of the services rendered, or the price paid in case of a sale or pur-
chase.   Sugden v. Crossland, 3 Smale & G. 192; Colly. Part'n, §§
179, 186; McKay's Case, 2 Ch. Div. 5; Pearson's Case, 5 Ch. Div.
336; Parker v. McKenna, L. R. 10 Ch. App. 96; Iron Works Co.
v. Grave, 12 Ch. Div. 738, 746; Railway Co. v. Blakie, 1 Macq. 461;
Wardell v. Railroad Co., 103 U. S. 651, 658.   But we think the rule

is not applicable to the present case. In no proper sense were the bonds in controversy a profit made out of the agency or fiduciary relationship which here existed. They were not a gratuity, nor were they paid to the Scrantons because of their fiduciary position. They were paid and received upon a valuable consideration moving wholly from the Scrantons individually. The Scranton Steel Company had no claim to the future services of the Scrantons. Their time belonged to themselves. The bonds were no part of the consideration to which the Scranton Steel Company was entitled. The two contracts were distinct in parties, subject-matter, and consideration. The bonds were not paid to the Scrantons to influence their action adversely to their principal. Neither was the Scranton Steel Company injured by the individual contract. In very truth, the company was profited thereby, for without the personal covenant consolidation could not have been effected at all. In its facts this case differs essentially from every case relied on or cited by the plaintiffs. It is well exemplified by the hypothetical instance put by the defendants' counsel, of an agent including his own property in a sale of his principal's property. Would it be pretended that the principal could rightly claim the price of the agent's property as well as the price of his own, if the two things were clearly separable, and the transaction bona fide? Yet wherein would that case differ from this? It might, indeed, in the supposed case, be good cause for rescission that the agent, by putting in property of his own without the consent or knowledge of his principal, had disqualified himself from acting, by reason of a possible conflict between his duty as agent and his self-interest. And so, here, if the plaintiffs were proceeding for a rescission of the consolidation agreement, they might have tenable ground. But the plaintiffs propose to hold onto the consolidation agreement. So electing, and actual fraud being eliminated from the case, can they take from the Scrantons the price of their personal covenant, without which the consolidation was unattainable? Surely, in a court of equity, the question admits of but one answer. The transaction being in fact honest, the consolidation itself unchallenged, and the Scrantons bound hand and foot by their personal covenant, their title to the consideration paid to them by the covenantee is unimpeachable by the Scranton Steel Company, or the complaining stockholders of that company. This view makes it unnecessary to consider the effect of the action of the stockholders' meeting of May 18, 1891.

Let a decree be drawn, dismissing the bill, with costs.

BUFFINGTON, District Judge. After a thorough consideration of the case, I unreservedly concur in the conclusions of fact and law expressed in the foregoing opinion.