# Commonwealth Title Insurance & Trust Company *v.* Seltzer.

*Corporation—Stock—Officers—Sales—Collusive sale—Illegal profits—Costs.*

1. An officer is but the agent of his corporation, and in all transactions in which its interests are involved, he must act for it with unselfish singleness of purpose, and if in any such transaction it appears that he has acted against the interest of his corporation, the mere fact that the means used to accomplish the unlawful end would if standing alone be lawful in themselves will not save such officer from responsibility to account for profits thus made by him which otherwise might have gone into the coffers of his corporation.

2. Where the president of a corporation, practically the whole of whose capital is invested in a valuable piece of real estate, is approached by the agent of another corporation which desires to buy the real estate and, although he knows that his company is willing to sell its property, leads the agent to believe that the real estate cannot be purchased, and afterwards negotiations are carried on between the two which are consummated in a written contract whereby the agent contracts to buy from the president a majority of the stock of the company owning the real estate, and thereupon the president and a director of his corporation, acting collusively, buy in enough stock to gain control of the corporation, which they turn over to the

agent of the other corporation in pursuance of the contract, whereby the agent secures control of the corporation owning the real estate, and the real estate is thereupon regularly sold and deeded over to the agent's corporation for a not inadequate price, such president and director, in a bill filed by certain of the stockholders, will be compelled to refund to such claimants their proportionate share of the profits made on the sale of the stock to the agent, where the facts conclusively show that all of the negotiations, arrangements and contracts in the stock deal, and the sale and transfer of the real estate, were really parts of one and the same transaction.

3. In such a case all that the claimants are entitled to recover is the same share of the profits that they would have received had such profits gone into the treasury of the corporation instead of into the pockets of the president and director; but the costs will be imposed on the defendants.

*Equity—Class bill—Stockholders—Practice, equity.*

4. The rule is that a bill which asserts the right of a corporation must ordinarily be brought by the corporation itself, and that the right of an individual stockholder to act for the corporation is exceptional, but where the corporation has practically gone into liquidation and its trustees have no active duties to perform, and where those trustees are found to be the nominees of the defendants who committed the wrong complained of, the stockholders have reason to believe that a suit instituted in the name of the corporation would not be prosecuted with effect, and the trial judge has the right to allow them to bring and maintain their own bill.

*Practice—Equity practice—Finding of fact—Deduction from other facts—Review.*

5. When the judgment of the trial court is based upon a deduction from other facts, the conclusion, being the result of reasoning, is subject to revision and to correction if erroneous.

*Corporations—Receivers—Stockholders' bill—Equity.*

6. On a stockholder's bill against the president and a director of a corporation in which the corporation itself is a party defendant, to recover illegal profits made on the sale of the company's real estate, a receiver will not be appointed, where a receivership will entail heavy expenses on all concerned without bringing any corresponding benefit.

Argued Jan. 18, 1910. Appeal, No. 150, Jan. T., 1909, by Charles M. Seltzer and J. Haseltine Carstairs, defendants, and appeal, No. 183, Jan. T., 1909, by the Commonwealth Title Insurance & Trust Company, and Frank L. Lyle, Executors of

Charles E. Ellis, deceased, plaintiffs, from decree of C. P. No. 4, Phila. Co., Dec. T., 1905, No. 4,952, in case of the Commonwealth Title Insurance & Trust Company and Frank L. Lyle, Executors of Charles E. Ellis, deceased, the Fidelity Trust Company, Trustee for Charles N. Davis, Kate C. White and Mary W. White, Executrices of William J. P. White, deceased, and Benson W. Conrad, stockholders of the Continental Hotel Company on behalf of themselves and all other stockholders of said company v. the Continental Hotel Company and Charles M. Seltzer, J. Haseltine Carstairs, Frank Haseltine, William Dulles and Eli K. Price, officers and managers of said company. Before BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity filed by certain stockholders of a corporation against the corporation and certain of its officers, alleging that in a sale of the corporate property the defendant officers had fraudulently received a special profit and praying that these officers be required to account to them directly for their proportion of the profits, or that a receiver should be appointed for the corporation and that an accounting for the profits be required to be made to such receiver. Before AUDENRIED, J.

The court held that two of the defendants, Charles M. Seltzer and J. Haseltine Carstairs, had made an illegal profit and that the plaintiffs were entitled to their proportionate share of these profits, and denied the prayer for the appointment of a receiver.

The facts appear in the opinion of the Supreme Court.

The court entered the following decree:

And now, March 30, 1909, this cause came on to be further heard at this time and was argued by counsel, and upon consideration thereof, it is ordered, adjudged and decreed as follows:

1. So far as it involves the claims of the plaintiffs for an accounting by the defendants Frank Haseltine and Eli K. Price and by the representatives of the defendant William Dulles, deceased, and so far as it relates to the defendant the Continental Hotel Company, the bill is dismissed. The costs of the

said four defendants shall be paid by the plaintiffs who shall contribute thereto in the following proportions, viz: Charles E. Ellis, one-fourth; Kate C. White and Mary W. White, executrices of William J. P. White, deceased, one-fourth; Benson W. Conrad, one-fourth; and the Fidelity Trust Company, trustee for Charles N. Davis under the will of Charles W. Poultney, deceased, one-fourth.

2. The defendants Charles M. Seltzer and J. Haseltine Carstairs shall pay to the plaintiff Charles E. Ellis, the sum of $1,540.78; to the plaintiffs Kate C. White and Mary W. White, executrices of William J. P. White, deceased, the sum of $357.19; to the plaintiff Benson W. Conrad, the sum of $286.64; and to the Fidelity Trust Company, trustee for Charles N. Davis under the will of Charles W. Poultney, deceased, the sum of $286.64 and the said Charles M. Seltzer and the said J. Haseltine Carstairs shall pay the costs of each of the said plaintiffs.

The defendants, Charles M. Seltzer and J. Haseltine Carstairs, appealed, assigning as error the decree of the court.

The Commonwealth Title Insurance & Trust Company and Frank L. Lyle, executors of Charles E. Ellis, deceased, plaintiffs, appealed assigning as error the refusal to appoint a receiver.

*John G. Johnson,* for Charles M. Seltzer and J. Haseltine Carstairs, appellants.

*M. Hampton Todd,* with him *G. Heide Norris* and *John H. Sloan,* for plaintiffs as appellees and for the executors of Charles E. Ellis, deceased, appellants.—Directors and officers of a corporation will not be permitted to make any profit for themselves out of a transaction in which their corporation is interested: Simons v. Vulcan Oil & Mining Co., 61 Pa. 202; Rice's App., 79 Pa. 168; Bird Coal & Iron Co. v. Humes, 157 Pa. 278.

No demand by the stockholder for action by the corporation was necessary in this case, the officers of the corporation being themselves guilty of the wrong complained of: Warner v.

Hopkins, 111 Pa. 328; Wolf v. R. R. Co., 195 Pa. 91; Mc-Closkey v. Snowden, 212 Pa. 249.

*James F. Hagen* and *John Marshall Gest,* for the estate of William Dulles, appellees.

OPINION BY MR. JUSTICE MOSCHZISKER, March 14, 1910:

Two of the defendants have appealed from a decree ordering them to pay to the plaintiffs certain sums representing illegal profits found to have been made by these defendants as officers of a corporation in which the plaintiffs were stockholders. One of the two defendants was the president and the other was a director of this corporation. The corporation had practically its whole capital invested in a valuable piece of real estate. The first of the defendants came in contact with the agent of another corporation which desired to buy this real estate. The defendant was informed of this fact, and although he knew that his company was willing to sell its property, instead of treating with the agent on that basis, he led him to believe that the real estate could not be purchased. After this, negotiations were carried on between the two which resulted in a written contract whereby the agent was granted an option to purchase from the defendant a sufficient number of the shares of stock of the corporation to control it. This contract on its face bears evidence of its real purpose, which was to place the agent or his constituent in a position to secure the desired real estate. The defendant conceived the scheme of buying in enough stock to gain control of his corporation immediately after his first meeting with the agent of the other corporation. Not having sufficient funds to properly finance the matter, he took in the other defendant, and thereafter they were associates in common in the enterprise, each bound by the knowledge and actions of the other. Together they accumulated the stock covered by the written contract. The deal went through exactly as desired: the agent secured enough stock to control the corporation which owned the real estate, and its property was duly deeded to the corporation represented by him; the purchase price,

which was not found to be inadequate, being subsequently divided among the stockholders of the former corporation. Certain of the stockholders, believing that the officers had so manipulated the sale of the property as to make a secret and illegal profit for themselves at the expense of their corporation, filed a bill against the defendants in question and several of the other officers of the company. The corporation was also included as one of the defendants for the purpose of securing the appointment of a receiver. The bill came on for hearing with answers filed by the several defendants denying all of its serious allegations.

The trial judge filed an adjudication with full and elaborate findings of fact, which we do not deem it necessary to further outline here at any great length. The important findings upon which the decree against the two defendants must either stand or fall are to the effect that from the inception of the negotiations between the defendant, who was the president of the real estate owning corporation, and the agent of the company which desired to purchase the real estate, it was understood that the effort to get control of the stock of the former was solely for the purpose of forcing the sale of its property to the latter, and the accumulation and transfer of the large block of such stock was made in order to facilitate and effectuate that purpose. Further, that the sale and transfer of the property was carried out by means of a meeting of the stockholders of the real estate owning corporation, at which meeting the directors and officers were given authority ("but not the binding direction") to accept the offer made by the company represented by the agent with whom the stock deal had been made; and that this meeting was immediately followed by a meeting of the directors, participated in by the two defendants, and by resolution of that body the transfer of the property was duly authorized. The trial judge finds that this meeting and all that took place there "was part of the same transaction of which the making of the profitable contract for the sale of their (the defendants') 2,250 shares of stock formed another and inseparable part, and it was understood and intended by them so to be. The profit realized by

(the two defendants) on their sale of stock was an incident to the sale of the property." On the facts as found, the court below reached the conclusion that the two defendants, having as managers of the real estate owning corporation participated in making the sale of its property, were bound to account for the profits made by them in the stock deal with the agent of the purchasing company, the contract for that purpose "being, in fact, an integral part of the same transaction and related to the sale of the property."

The defendants contend that the trial judge fell into error in drawing the deduction that the stock deal and the sale of the real estate were parts of one and the same transaction; and we are asked to reverse the findings based on this deduction and to set aside the decree. "When the judgment of the court below is based upon a deduction from other facts, the conclusion, being the result of reasoning, is subject to revision and to correction, if erroneous:" Woodward v. Carson, 208 Pa. 144. With this rule in mind we have gone over the record and the notes of testimony with exceeding care, but we are unable to say that we find any error in the fundamental facts as stated by the trial judge or in his deductions therefrom. It is not only perfectly conceivable that an unprejudiced mind might reasonably reach the conclusion that all of the negotiations, arrangements, and contracts in the stock deal, and the sale and the transfer of the real estate, were really parts of one and the same transaction, but anyone reading the testimony and looking at the documentary evidence would find his mind irresistibly travelling to the conclusion that, although the parties endeavored to give to them the appearance of separate transactions and even on occasions talked to one another as if they were such, nevertheless they all the time knew that everything they were doing was intended to bring about the sale and transfer of the real estate from the corporation represented by the defendants to the corporation represented by the agent. These defendants as managing officers were under an inherent obligation not to in any manner use their positions to advance their individual interests as distinguished from the interests of their

corporation. When the president of this corporation was approached by a likely buyer, instead of persistently maintaining the attitude that there was no possibility of the property being acquired by purchase, and then proceeding to use this information for his own personal benefit, and incidentally to the detriment of his corporation, he should have overlooked his own welfare and acted entirely for the benefit of his corporation. An officer is but the agent of his corporation, and in all transactions in which its interests are involved he must act for it with unselfish singleness of purpose. If in any such transaction it appears that he has acted against the interest of his corporation, the mere fact that the means used to accomplish the unlawful end would if standing alone be lawful in themselves will not save such officer from responsibility to account for profits thus made by him which otherwise might have gone into the coffers of his corporation. "The director of a corporation is a trustee for the entire body of stockholders, and by assuming the office, he undertakes to give his best judgment in the interests of the corporation in all matters in which he acts for it, untrammelled by any hostile interest in himself or others; and all secret profits derived by him in any dealings in regard to the corporate enterprise must be accounted for to the corporation:" Bird Coal & Iron Co. v. Humes, 157 Pa. 278. In scrutinizing the acts of such officers, the court will not heed mere forms when the substance which lurks behind them shows profits from a dealing in the corporation property. It is quite true that the profits in the present case were made to appear on the surface as not coming from the sale of the property of the corporation; but as all the facts show that the purchaser only wanted the real estate, and not the control of the franchise of the corporation, there is little or no doubt that the profits paid to the two defendants were considered by the purchaser as part of the cost of the real estate. The purchaser wanted the property and was willing to pay a price for it. The defendants knew this, and the facts justify the inference that the stock dealing was for the very purpose of diverting a part of that price from the corporation into their own pockets; and this, in a nut-shell, is the theory

upon which the case was decided. The conclusions of the court below were reached, and are here sustained, on the peculiar facts in this case, with a full and express recognition of the general rule that a stockholder, even though he be one of the managing officers of a corporation, has the right to buy and sell its stock and to keep any profits which he may thus acquire. But corporation officers cannot under cover of this rule carry through a transaction such as appears in this case without accounting for profits thereby diverted from their corporation.

The defendants further contend that the plaintiffs should not have been allowed to maintain the action in their own names. The court below in overruling this contention based its conclusion upon the peculiar relation in which the plaintiffs as stockholders stood with respect to the managers of the corporation, holding that, as these managers were the nominees of the defendants, equity would regard a demand upon them for the prosecution by the corporation of a claim against these particular defendants as "idle, and, therefore, unnecessary." While recognizing the rule that a bill which asserts the right of a corporation must ordinarily be brought by the corporation itself, and that the right of an individual stockholder to act for the corporation is exceptional, we are convinced that there was no error in treating this case as one of the exceptions. In this connection, we must look at the rule and the theory upon which it rests: "The rule that a shareholder cannot sue if the corporation is able to protect itself is a general one, founded on convenience and the implied agreement of the parties, that where a trustee is invested with active duties and represents numerous beneficiaries, no portion of these beneficiaries are entitled to bring a suit for the protection of the trust, unless the trustee has refused, or is unable,. to take the necessary steps to protect it on their behalf:" Morawetz on Private Corporations (2d ed.), vol. 1, sec. 239. In a case like the present, where the corporation has practically gone into liquidation and its trustees have no active duties to perform, and where these trustees are found to be the nominees of the defendants who committed the

wrong complained of, the stockholders had reason to believe that a suit instituted in the name of the corporation would not be prosecuted with effect, and the trial judge had the right to allow them to bring and maintain their own bill: Wildee v. McKee, 111 Pa. 335.

In addition to the appeal of the two defendants, one of the plaintiffs has appealed, complaining of the amount of the award, of the dismissal of the bill as to the other defendants, of the refusal to appoint a receiver, and of the order as to costs.

It is contended that the defendants were not charged with all of the profits realized by them; and further that the distributive proportions were fixed too low; while on the other side the contention is that they were too high. Without going into any lengthy discussion on these points, it is sufficient to say that although the defendants received a greater sum than that with which they are charged as profits, yet they paid to some stockholders a larger price than the value named in the written contract concerning the sale of the stock, so their actual profits were as found by the trial judge. The mere fact that some of the persons to whom they paid this higher price were closely connected with the defendants by relationship or otherwise cannot alter the situation. The trial judge found "The share of each (plaintiff) is found in the proportion which the number of his shares (of stock) bears to the total number of shares outstanding." All that the plaintiffs are entitled to recover is the same share of the ascertained profits that they would have received had these profits gone into the treasury of the company instead of into the pockets of the two defendants; and this was the proportion awarded to each of them by the court below. No fault can justifiably be found by any of the parties to this cause with the method pursued by the trial judge in arriving at the amount of the profits as stated in the adjudication, or with his distribution thereof.

The court below held that no case had been made out against the other defendants; and decided that it was not necessary to appoint a receiver for the corporation in order to give the necessary relief, "since a receivership would entail heavy expenses on all concerned without bringing any corre-

sponding benefit." Accordingly the bill was dismissed as to these defendants. In this we find no error.

The order made as to the costs seems to be just and reasonable and will not be disturbed.

All the assignments of error in both of the appeals are overruled, and the decree of the court below is affirmed. The appellants in each instance to pay the costs of their respective appeals.