No. 23,967.

T. E. LYON, *Appellant,* v. EMERSON CAREY, *Appellee.*

SYLLABUS BY THE COURT.

1. CORPORATE STOCK—*Sale by Stockholder—False Representations—Demurrer to Evidence Properly Sustained.* In an action by a stockholder against the president of a corporation for damages for inducing him by false representations to sell his stock to the president, it is held that the proof failed to support the allegations of the petition, and a demurrer thereto was properly sustained.

2. SAME—*Refusal of Amendments to Petition—No Error.* Certain amendments sought to be made to the petition held to be sufficiently covered by the allegations already contained therein.

3. SAME—*Excluded Evidence.* Objections touching the exclusion of certain evidence held to be without substantial merit.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed May 6, 1922. Affirmed.

*F. Dumont Smith,* and *Carr W. Taylor,* both of Hutchinson, for the appellant.

*C. M. Williams,* and *D. C. Martindell,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff appeals from orders sustaining a demurrer to his testimony and refusing certain proffered amendments to his petition.

He alleged in substance that the plaintiff was a stockholder in the Western Straw Products Company, a corporation organized for the purpose of manufacturing strawboard and paper, of which stock he owned 100 shares of $100 each; that in January, 1914, a new company was organized known as The Hutchinson Box Board & Paper Company, which was a reorganization of the former company and which took over and became the owner of its plant and continued the operation of the business; that the plaintiff became the owner of $6,300 of the box board common stock; that the directors of this company employed the defendant as manager of its business and agreed to pay him $17,500 par value of the preferred stock a year for three years and since that time he has been in the exclusive control and management of its affairs; that in August, 1914, the defendant proposed to the directors of the box

Lyon v. Carey.

board company the organization of another corporation to be called The Hutchinson Egg Case Filler Company, which was done, and the box board company agreed to rent a tract of land and erect a filler plant, the filler company agreeing to take the required material, strawboard, from the box board company; that in January, 1915, a resolution was adopted ratifying the action of its board in leasing the ground to the filler company, and immediately after the adjournment of the board, the defendant caused a contract to be drawn between the box board company and the filler company which he signed as president of both companies, and that F. W. Kaths, who was secretary of the filler company, attested his signature as president of the filler company, and also under his direction signed the name of the secretary of the box board company without his knowledge or authority; that after the execution of this contract the defendant bought all the stock in the filler company, or about all, and is still the owner of it; that the defendant received all the profits from the filler company from such contract; that upon the execution of this contract the filler company proceeded to purchase from the box board company all the strawboard it required at $21 a ton; that very shortly afterwards the price of box board began to advance until by the beginning of 1916, the price was about $40 a ton and advanced steadily so that during the years 1916 and 1917, the average price was $55 to $60 a ton, during all of which time the filler company through the president was buying box board at $21 a ton with a loss to the box board company of $60,000 in 1916, and more than $80,000 in 1917; that the defendant represented at various times to the stockholders and directors, including the plaintiff, that the box board company was not making any money and that its stock was worthless and concealed from them the existence of the contract referred to and the fact that the straw was being bought at $21 a ton.

"That in April, 1917, the defendant proposed to this plaintiff to purchase his said stock in the box board company at a price of $2,500 for all of his stock, and at the same time stated to the plaintiff that the said stock had no value and was worthless; that the said box board company was not making any money and never would. That the plaintiff had no knowledge as to the true facts and believed and relied upon said representation. That the said defendant as managing director of said box board company, and thereby a trustee for this plaintiff and the other stockholders, concealed all of the facts above set forth, and thereby wilfully deceived this plaintiff and persuaded him to sell his said stock to the defendant for $2,500."

The plaintiff went upon the stand and testified among other things as follows:

"I had known Emerson Carey prior to the 10th day of April, 1917, about five years and had confidence in him. I came down here the first part of April, 1917, to see him. I wanted him to buy my stock. He said he didn't care to buy. I asked him what he thought about it, and he said he didn't think the stock was worth much. He said he didn't think the stock was worth anything hardly, and he didn't care to buy it. I tried to get him to make me an offer on it, but he wouldn't make me an offer. He said the stock wasn't worth anything. I went home. Later I wrote him a letter and made him an offer; I told him I would take $2,500.00 for my holdings in the Company. He sent me a check for $2,500.00, I think about the 24th of April, and I sent him my stock."

A letter addressed to him October 16, 1915, contained this statement:

"Can you buy this stock or place it for me this is less than 50 cts. on the dolar for it and I doe not want to offer it to the public but I must have some money or go broke. T. E. Lyon. I am ready to turn over 60030.00 for 30000.00. Please let me hear from you."

In reference to this the defendant wrote that it would be impossible for him to handle the stock at this time.

"Q. You say when you came up to see Emerson Carey to get him to buy this stock, he didn't tell you anything about the financial condition of the plant? A. No, sir.

"Q. He didn't buy your stock then did he? A. No, sir. I went home without selling to him. After I went home I made up my mind I would take $2,500.00 for it. I wrote him a letter and he sent me a check. He didn't tell me in the letter that the stock wasn't worth anything.

"Q. What did you say he said when he told you the stock wasn't worth anything. A. Well, I was trying to sell it to him and he said he didn't care anything about it, that it wasn't worth anything.

"Q. Did he say it wasn't worth anything? A. Well, that it wasn't worth anything to him or something.

"Q. What is that? A. It wasn't worth anything to him.

"Q. It wasn't worth anything to him. As a matter of fact, you knew it was worth something? A. Oh, yes; I thought it was.

"Q. You made up your mind it was worth $3,000.00 when you offered it to Mr. Asher didn't you? A. I expect so. I figured it was worth that much to me to hang on it a while. . . .

"Q. Now, when you were down here talking to him about the stock and wanted him to buy it and didn't fix any price on it, you said he said it wasn't worth anything to him? A. Yes, sir. He said he didn't care for it; he said the boys could buy it if they wanted to.

"Q. I thought you said a while ago he said it wasn't worth anything to him? A. Well—

"Q. Which was it. That amounts to something. A. I might have changed a sentence or something.

"Q. We want you to tell what it was because it may mean a good deal. Which was it, that it wasn't worth anything much to him or it wasn't worth anything much? A. It could have been both.

"Q. It could have been both; which was it? A. I don't know. As a matter of fact I didn't think it was worth a good deal to me. I couldn't use it. I didn't think it would ever be worth anything."

After the plaintiff's testimony was closed it was apparent that a demurrer was about to be sustained and the plaintiff asked leave to amend, which request was refused, and this and two other attempts were made to amend the petition by alleging how the price of straw had advanced in 1916 and 1917, and how the defendant succeeded in purchasing for himself and sons all the stock in the filler company and began a systematic campaign to buy stock in the box board company and bought $190,000 out of $313,000 worth, knowing that the stockholders were in ignorance of the true state of affairs, and were receiving no dividends, and believing from the defendant's statements that the stock had little value, were anxious to sell; that the defendant would state that he did not care to buy, but would refer to his sons or one of the agents. These amendments were all refused.

The plaintiff also complains of the rejection of certain testimony touching the value of the stock and the amount of profit, but he proved all these down to March, 1917, and as the petition alleged the sale in April, 1917, it does not appear that any material error was committed in the exclusion of this evidence.

Reliance is placed on the rule declared in *Stewart v. Harris,* 69 Kan. 498, 77 Pac. 277, that the directing and managing officer of a corporation having knowledge of the condition of its affairs stands in such a trust relation to the stockholders that he must inform those not engaged in the transaction of the business of the true condition before he can rightfully purchase their stock. Counsel for the defendant do not regard this decision with favor, but call attention to the different rules announced by other courts. Had the facts alleged and proved, however, been within the analogy of that decision we would have no disposition to depart therefrom. It is difficult to read the record without concluding that the plaintiff's counsel were not fairly advised by their client of the real facts of his case. If they had set out in their petition the substance of what the plaintiff swore to it is quite likely they would have ex-

pected a demurrer thereto to have been sustained. Instead of proving the allegation that the defendant sought him out under false pretenses and succeeded in buying his stock, the plaintiff's own testimony shows that he sought out the defendant and tried to sell and it turned out to be almost an instance of running him down and wearying him by his importunity. The plaintiff simply failed to make out a case. It does not appear therefore that error was committed in overruling the demurrer.

The proper amendments, if they had been permitted, would not have changed the status of the case under the testimony which had already been introduced. The pleading, as it was, contained the allegation—

"That the said defendant as managing director of said Box Board Company, and thereby. a trustee for this plaintiff and the other stockholders, concealed all of the facts· above set forth, and thereby wilfully deceived this plaintiff and persuaded him to sell his said stock to the defendant for $2,500."

The amendments·sought to be added were only amplifications and evidence of this very succinct averment already set out. Besides, in such matters the discretion of the trial court is controlling unless abused. (*Long v. Railroad Co.*, 100 Kan. 361, 164 Pac. 175, and cases cited.)

Complaint is made that evidence of the ratification of the filler company contract and of the value of the stock was refused. As to the first, it may be said that the contract itself was received in evidence and stockholders and officers were permitted to testify as to their knowledge of it or lack thereof, and it was admitted that the secretary did not sign his own name to it. As to the second, counsel say in their brief that they offered the sworn statement of the defendant to the secretary of state showing the real value of the real estate and personal property. , The abstract shows that this report was admitted "for the purpose of the valuation only of the stock."

A consideration of the entire record fails to convince us that any. material error appears.

The rulings complained of are therefore affirmed.