## C. E. DUTTON AND OTHERS v. G. W. BARNES.[1]

April 9, 1925.

No. 24,186.

**President of company may buy its stock without disclosing its value.**
    1. The president of a corporation may buy stock of a stockholder without disclosing information affecting its value. In making such purchase he does not occupy a fiduciary relation.

**But when he buys stock concealing a favorable contract for himself, he must account to the sellers.**
    2. The president and active manager of a corporation was offered a stated price for his own stock, a stated salary for a year, and a bonus, if he would procure enough other stock at the same price to give control. Without disclosing the conditions favorable to himself he induced others to sell certain of their stock, advising them that it was well to do so. It is *held* that he was engaged in a joint undertaking or enterprise with those selling with him and must account proportionately with them for the bonus received.

*Headnote 1. See Corporations, 14a C. J. p. 128, § 1896.
Headnote 2. See Corporations, 14a C. J. p. 131, § 1899.

Action in the district court for Hennepin county for an accounting and for other relief. The case was tried before Waite, J., who ordered judgment in favor of plaintiffs. G. W. Barnes appealed from the judgment. Affirmed.

*Einar Hoidale* and *Edward Nelson,* for appellant.
*H. E. Fryberger,* for respondents.

DIBELL, J.
Action by the plaintiffs to recover a portion of the profits obtained by the defendants upon the purchase and sale of a controlling interest in the stock of the Travelers Equitable Insurance Company. The plaintiffs are C. E. Dutton, D. H. Evans, J. L. Garrow, Charles

[1]Reported in 203 N. W. 414.

F. Bierbaum, Oscar Burkhardt, A. W. Stieffel and R. S. Tucker. There was no recovery against the defendants Emma Barnes and F. H. Jacobson. There was judgment for all the plaintiffs, except Burkhardt, against G. W. Barnes. He appeals.

In the early part of 1922 one McMichael mentioned to Barnes that "he was going back in the insurance business," and that "he had gotten together a number of influential insurance men * * * and they were going to organize an insurance company." Then or soon afterwards Barnes suggested to McMichael "Why wouldn't it be a good idea to buy our company?" Negotiations resulted in two contracts of date March 22, 1922. By one Barnes agreed to sell McMichael all his stock in the Travelers company and to use his best efforts to obtain additional stock to make with his own 7,000 shares, which was a controlling interest. McMichael agreed to pay $18 per share for the 7,000 shares. The stock was to be procured within 60 days. McMichael agreed to deposit in escrow $5,000 in cash, or bonds of equivalent value, to be forfeited to Barnes as liquidated damages in the event of his failure to perform. The other contract recited that McMichael had agreed to purchase Barnes' stock and enough more to make 7,000 shares. It was agreed that for 5 years Barnes would not engage in the insurance business in any state in which the Travelers company did business; that during such period he would use his best efforts to conserve and retain for the company its agency force; and that he would remain in the service of the company for one year. In consideration thereof McMichael agreed that Barnes should be employed for one year at $6,000; and that in addition he should receive $40,000 in cash, or its equivalent acceptable to him, within 30 days after the transfer of the 7,000 shares. It was understood that McMichael was acting for a corporation then in process of organization.

The contracts were carried out. Barnes procured the transfer of the stock to the holding company and received the $40,000.

The plaintiffs who parted with some part of their stock claim the right to participate in the $40,000 in the proportion which the stock they sold bears to the 7,000 shares.

1. Our holding is in accord with the prevailing doctrine that an officer or director does not occupy such a fiduciary relation to the stockholders that he cannot buy their stock as may other stockholders without a full disclosure of facts within his knowledge affecting its value. Seitz v. Frey, 152 Minn. 170, 174, 188 N. W. 266, and cases cited.

2. The trial court based the judgment for the plaintiffs upon the proposition that Barnes was not purchasing stock in the ordinary way, but that he assumed to act with the plaintiffs in a joint undertaking or enterprise which was to result in the sale of the stock at $18. Barnes was the real insurance man of the corporation. He was president and in active charge. He told the stockholders a doleful story of the company's condition and prospects. He was acting with them, putting in his stock in making the sale, advised it, but did not disclose his salary arrangement and bonus. In a way he was heading a syndicate to sell 7,000 shares. He was concealing and not disclosing.

The evidence justifies the view taken by the trial court that Barnes and the plaintiffs in the transfer of the stock were engaged in a joint undertaking, with Barnes, the leader in the movement, possessed of superior knowledge; and that he could not take the secret profit of $40,000 and escape accounting to the plaintiffs. Partners and those engaged in a joint project owe to each other active good faith. Their relationship is fiduciary. Church v. Odell, 100 Minn. 98, 110 N. W. 346; Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108, Ann. Cas. 1914C, 689; Moore v. Thorpe, 133 Minn. 244, 158 N. W. 235; Kelly-How-Thompson Co. v. Minnesota Loan & Trust Co. 159 Minn. 529, 199 N. W. 233; Bringgold v. Stucky, 162 Minn. 343, 202 N. W. 739. In this connection Fisher v. Budlong, 10 R. I. 525, may be noted profitably.

The question of liability is largely dependent upon the view taken of the situation as one of fact. We do not say that no other viewpoint could be adopted. That thought applicable by the trial court is satisfactorily sustained by the evidence; and we apprehend, with this viewpoint accepted, it should be conceded that one cannot profit by the transaction as did the defendant. Men engaged broadly in

business affairs generally would say that such a transaction should not succeed; and the view that it cannot is properly crystallized into a principle of law.

The defendant relies upon Bristol v. Scranton (C. C.) 57 F. 70. It has been considered carefully and does not appeal to us as controlling. The defendant's promise not to engage in the insurance business for 4 years after his employment terminated entered into the agreement, as did his $6,000 salary for a year, and his $40,000 bonus. They are not separable. They were kept secret. We see nothing in them that should prevent a recovery.

Judgment affirmed.