**DUNNETT et al. v. ARN et al.** *

**ARN et al. v. DUNNETT et al.**

**Nos. 960, 961.**

Circuit Court of Appeals, Tenth Circuit.

June 12, 1934.

*Rehearing denied July 16, 1934.

A. K. Swann, of Tulsa, Okl., for James G. Cloud.

F. E. Riddle, of Tulsa, Okl. (O. G. Rollins, of Tulsa, Okl., on the brief), for Arn and others.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

The Operators Oil Company, a Delaware corporation, had outstanding capital stock aggregating 113,255 shares. James G. Cloud and Ray M. Dunnett owned or controlled 60,-000 of such shares. The plaintiffs below and the remaining stockholders, hereinafter called the minority stockholders, owned 53,255 of such shares. Cloud was president and Dunnett secretary of the Operators Company.

The Operators Company owned a valuable producing oil lease. The Sunray Oil Company, a Delaware corporation, desired to acquire this lease. Shortly prior to November 22, 1929, the Sunray Company opened negotiations for the purchase of such lease, but the Operators Company demanded a larger cash payment than the Sunray Company was willing to make, and the negotiations failed. Thereupon Cloud and Dunnett and the Sunray Company devised a plan whereby the Sunray Company would acquire the assets of the Operators Company by the purchase of all of its capital stock. On November 22, 1929, Cloud and Dunnett and the Sunray Company entered into a contract whereby Cloud and Dunnett agreed to sell and deliver to the Sunray Company 60,000 shares of the stock of the Operators Company in consideration of $250,000 in cash to be paid on delivery of the stock, $250,000 additional cash to be paid in 12 monthly installments, Sunray Company bonds of the face value of $200,000, and 36,000 shares of Sunray Company stock of the par value of $360,000. The portions of such contract here pertinent are set out in Note 1.

On November 27, 1929, Cloud and Dun-

Glenn Alcorn, of Tulsa, Okl., and W. V. Pryor, of Sapulpa, Okl. (Robt. W. Raynolds, of Tulsa, Okl., on the brief), for the Dunnetts.

Benjamin C. Conner and John M. Winters, Jr., both of Tulsa, Okl., for First Nat. Bank & Trust Co. of Tulsa.

Note 1.

"7. As a material part of this agreement, Sellers agree to deliver unto Sunray the resignation of a majority of the Board of Directors of the Operators Oil Company, and all subsidiaries, and to cause to be elected in their places proper successors, to be designated by Sunray, in such manner as may be permitted by the by-laws of the Operators Oil Company. Sellers shall also deliver to Sunray the resignations of all officers of the Operators Oil Company, and subsidiaries, except the resignation of E. F. Hamm, second vice-president of the corporation, and shall cause to be elected in their stead officers to be selected by Sunray.
* * *

"9. It is further understood and agreed that from and after the signing of this agreement and prior to the delivery of the stock hereinbefore provided for, and up to and including the consummation of this transaction, both by the delivery of stock and resignation of officers and directors hereinbefore provided, there shall be no

914

nett and one Wheeler sent the following telegram to each minority stockholder:

"We have sold our stock holdings in the Operators Oil Company to the Sunray Oil Corporation which has headquarters in Tulsa, Oklahoma, thus giving them more than 50% of the outstanding stock, and as a part of that transaction we have procured from them an offer to purchase all of the remaining outstanding stock of the corporation. A formal offer to that effect is being mailed to you today by Sunray. On this offer the Sunray will deliver to you one share of Sunray stock and pay you $6.00 in cash for each share of the Operators stock now held by you. This offer is open until December 15th, 1929, but we recommend its immediate acceptance by you pursuant to the details of their offer which you will shortly receive. We feel that this is a very favorable proposition, and we thoroughly investigated Sunray before accepting this stock as part payment of our stock and completing our part of the transaction. We can give you any information you want concerning that company, if desired. At the Directors' meeting today, at which we and Mr.

material change in the corporate status of said company and there shall be no dividends declared, authorized or paid, and no assets of any kind or character disposed of by said Operators Oil Company and none of its funds disbursed or expended, except in the usual and ordinary course of business, and in the necessary and usual proper operation of the business of the corporation, and that at the time of the consummation of this transaction by the delivery of said stock and resignations, said Cloud, as President of the corporation, shall make, execute and deliver to Sunray due and proper affidavit, to the effect that the above provisions have been met.

"10. In the event Sellers are unable to furnish any of such resignations, or for any reason are unable to deliver said stock, at the expiration of five (5) days from this date, the date within which such examination is to be made of the books and records and affairs of the corporation, Sunray shall not be required to pay the considerations hereinbefore provided, or to make provision therefor until such requirements and obligations have been met by said Sellers, and the obligation to take and pay for such stock shall be extended for not to exceed five days beyond such period of five days as may be consumed by Sellers in delays in performing their obligations under this contract.

"11. *It is further understood and agreed that it is the intention and purpose of Sunray to acquire all of the remaining outstanding capital stock of the Operators Oil Company by exchange of certain cash and stock of Sunray Oil Corporation, for* said remaining issued and outstanding shares of the capital stock of said Operators Oil Company, and to such end and for such purpose, Sunray will make, upon consummation hereof, an offer of exchange to such stockholders on the basis of 1 share of Sunray Oil Corporation stock, together with cash in the amount of Six ($6.00) Dollars, for each share of Operators Oil Company stock, subject to acceptance within ten (10) days thereafter, and that said first parties herein will recommend the same to such remaining stockholders and will aid and assist Sunray in presenting such offer, and in concluding the same, and that first parties will perform such services and assistance as may be reasonable and proper in aiding said Sunray in *accomplishing a complete absorption of the Operators Oil Company.* Sellers will render such further aid and assistance as may be reasonable and proper and requested of them by Sunray in taking over the affairs of the Operators Oil Company, and will give and render unto Sunray all information and knowledge within their possession concerning the affairs of said corporation and acquaint the said Sunray with all information concerning outstanding contracts and agreements of whatever nature the same may be, and will render any aid requested or required by Sunray, or the auditors or attorneys for Sunray, in investigating and ascertaining the affairs of the corporation.

"13. It is further understood and agreed that when *Sunray has finally completed the exchange of stock and absorption of said Operators Oil Company as hereinbefore provided,* and is ready to take over such company, said Cloud agrees to become a member of the Board of Directors of Sunray Oil Corporation and serve as such if and when elected thereto.

"14. It is further understood and agreed that no part or portion of the stock herein agreed to be conveyed to Sellers in said Sunray Oil Corporation shall be placed on the market before June 15th, 1930, and all portions of the same will be withheld from sale or disposition until said date. * * *

"17. Sellers agree that either or both of Sellers shall remain on or be elected to the Board of Directors of Operators Oil Company for a reasonable length of time, *pending the final absorption of said company by Sunray,* if desired by Sunray, but that no material portion of their time shall be required to be contributed to or spent in connection with the affairs of the company." (Italics ours.)

W. J. Doherty were present, it was the opinion of the Directors that the proposition is to the best interests of all stockholders. Thanksgiving Greetings.

"Signed: Cloud, Dunnett, Wheeler."

On the same date, the Sunray Company sent to each minority stockholder a letter, the pertinent parts of which follow:

"Gentlemen: The Sunray Oil Corporation, organized under the laws of the State of Delaware, with its principal office in New York City, New York, with operating headquarters at Tulsa, Oklahoma, having acquired approximately 74,000 shares of the Capital Stock of Operators Oil Company, being more than a majority thereof, hereby offers to acquire all of the remaining outstanding and issued stock of said company in the hands of stockholders who did not join in the transaction by which said stock was acquired by Sunray, by the delivery to such remaining stockholders of Operators of one share of the Capital Stock of the Sunray Oil Corporation, together with a cash payment of $6.00 per share, for each share of the Capital Stock of the Operators Oil Company.

"This offer is subject to acceptance on or before December 15, 1929. Immediate notice should be given to the office of the Operators Oil Company, Tulsa, Oklahoma, of acceptance of this proposition. * * *

"Sunray Oil Corporation,
"By C. H. Wright, Vice-President."

The names and amount of stock of the Operators Company owned by the plaintiffs below are as follows:

### Group 1

| | |
|---|---|
| W. G. Arn | 1,000 shares |
| Rae G. Morrison | 940 shares |
| Geo. H. Periolat | 800 shares |
| Eva C. Tideman | 860 shares |

### Group 2

| | |
|---|---|
| C. W. Shaw | 110 shares |
| Louis Wolff | 250 shares |
| J. N. Pierce | 250 shares |
| Norman Pierce | 2,010 shares |
| Robt. B. Strassen | 150 shares |

On receipt of such telegram and letter, Arn, Tideman, Periolat, and Morrison accepted the Sunray Company's offer, believing the majority group had sold their stock to the Sunray Company on the same basis. The other minority stockholders, with the exception of Rooney and Herpich, sold their stock to the Sunray Company on the terms contained in the offer of November 27, 1929. Rooney and Herpich received $2,500 for 111 shares owned by them.

Cloud and Dunnett carried out their contract with the Sunray Company and received payment in cash, bonds, and Sunray Company stock in accordance therewith for their stock in the Operators Company.

Sunray Company stock on November 27, 1929, had a market value of $8.12 a share.

Cloud and Dunnett testified that in their opinion the minority stockholders received more for their stock than did the majority stockholders.

Dunnett further testified that the Sunray Company first undertook to purchase the lease, and the negotiations therefor failed; that the Sunray Company still desired to acquire the lease and "a plan was worked out to buy the property," which did not require so much cash, and culminated in the contract of November 22, 1929.

Cloud and Dunnett did not disclose to Doherty, a Chicago director in the Operators Company, at the directors' meeting held in Chicago on November 27, 1929, the price and terms on which they had sold their stock in the Operators Company to the Sunray Company.

On December 17, 1929, Raymond Murray Dunnett and Annabel Dunnett his wife, and the First National Bank & Trust Company of Tulsa executed an agreement, denominated a living trust, under which Dunnett and his wife transferred to the bank $68,956 in cash, Sunray Company bonds of the face value of $102,500, Sunray Company notes for the aggregate principal sum of $125,000, and 16,068 shares of the capital stock of the Sunray Company to be held by it as trustee for the use and benefit of Dunnett, his wife, and their son, Daniel Raymond Dunnett. This trust fund was created from the cash and securities received by Dunnett for his stock in the Operators Company.

Cloud and Dunnett paid a commission of $35,000 to one Hudson for securing a purchaser for the stock of the Operators Company. The minority stockholders paid no commission.

There was no direct proof that the stockholders named in Group 2 relied upon or were deceived by the telegram.

Arn brought this suit against Dunnett, Annabel Dunnett, Daniel Raymond Dunnett, Cloud, Operators Oil Company, and The First National Bank & Trust Company of Tulsa.

In his complaint he alleged that "he prosecutes this suit in his own behalf and in behalf of all other shareholders formerly in

said Operators Oil Company residing in Chicago who desire to join herein and assist in defraying the expense of this litigation."

He further alleged: That the Sunray Company and Cloud and Dunnett collusively entered into a contract whereby it was agreed that the Sunray Company would purchase the stock of Cloud and Dunnett in the Operators Company at its full value, and that Cloud and Dunnett would induce the minority stockholders to sell their stock in the Operators Company to the Sunray Company at $2.00 a share less than it was actually worth, and whereby it was understood that the price to be received by Cloud and Dunnett would be concealed from such minority stockholders and they would be led to believe that they were receiving the same price a share as Cloud and Dunnett.

That in furtherance of such collusion and conspiracy Cloud and Dunnett sold their stock in the Operators Company and received for each share thereof $12.00 in cash and securities equivalent to cash, and three-fifths of one share of stock in the Sunray Company.

That thereafter Cloud and Dunnett wrongfully induced the minority stockholders to sell and transfer their stock in the Operators Company to the Sunray Company for $6.00 in cash and one share of Sunray Company stock for each share of Operators Company stock, by withholding from the minority stockholders the price and terms upon which Cloud and Dunnett had sold their stock in the Operators Company, and by leading the minority stockholders to believe that Cloud and Dunnett had sold their stock in the Operators Company to the Sunray Company on the same terms and conditions as the offer made to the minority stockholders; that as a result of such collusion, withholding of the true facts, and misrepresentation, the minority stockholders were induced to sell their stock for an aggregate amount of $95,000 less than it was actually worth, and Cloud and Dunnett were enabled to receive and did receive a larger percentage a share of the purchase price of the stock of the Operators Company than the minority stockholders. That on account of such facts Cloud and Dunnett and the Operators Company were indebted to the minority stockholders in the sum of $95,000. That the minority stockholders did not discover such fraud and collusion until November 15, 1932.

It further alleged the facts with reference to the transfer to the bank as trustee, of the cash and securities received by Dunnett from the sale of his stock in the Operators Company, and alleged that such transfer was voluntary and without consideration, and that the funds held by the bank under the trust agreement were impressed with a trust and lien in favor of the minority stockholders.

It prayed for an accounting of profits from Cloud and Dunnett, and for a decree adjudging that the funds held by the bank were trust funds for the benefit of such minority stockholders, to the extent of the unlawful profits taken and received by Cloud and Dunnett.

Thereafter the other minority stockholders named in Groups 1 and 2 joined as parties plaintiff.

Plaintiffs filed a supplemental bill in which they alleged that as a result of the collusion, withholding of the facts, and misrepresentation alleged in the original bill, minority stockholders were induced to accept for each share of their stock in the Operators Company $6.00 in cash and one share of Sunray Company stock at a value of $10.-00 a share; that the Sunray Company stock was not worth $10.00 a share, that Cloud and Dunnett received for their stock $7.00 more a share than the minority stockholders received, and that the "detriment suffered by * * * all * * * minority stockholders * * * is approximately $280,000.-00."

The court found: That the parties to the contract of November 22, 1929, contemplated that all of the stock of the Operators Company should be acquired for the Sunray Company, that all of the assets of the Operators Company should vest in the Sunray Company through such stock acquisition; and that all of the stock of the Operators Company was in fact procured by the Sunray Company and thus in effect all the assets of the former were acquired by the latter.

That pursuant to such contract Dunnett, Cloud, Wheeler, and Doherty held a directors' meeting on November 27, 1929, and sent the night letter to the minority stockholders.

That the plaintiffs relied on the statements therein made and accepted the proposition made in the Sunray Company's letter of November 27, 1929, believing that the officers and directors of the Operators Company had sold their shares therein for the same price and on the same terms as the offer made by the Sunray Company to the minority stockholders; and that Cloud and Dunnett intentionally withheld from Doherty and the minority stockholders the terms on which they had sold their stock and the price received therefor.

That Cloud and Dunnett received for each share of their stock in the Operators Company "$11.66 * * * in money or its equivalent and 3/5ths of one share in the Sunray * * * Company at the rate of $10.00 a share"; and that by means of such misrepresentation and concealment they obtained $2.41 more a share and more advantageous terms than the minority stockholders received.

That Cloud and Dunnett in entering into the contract of November 22, 1929, and in recommending to the minority stockholders that they accept the offer to be made to the minority stockholders for their stock, acted as corporate officers and directors of the Operators Company, and as fiduciaries to the minority stockholders.

That the bill of complaint should be dismissed without prejudice as to Shaw, Wolff, J. N. and Norman Pierce, and Strassen, for the reason they did not testify in the cause, and are not entitled to recover herein.

The court found the facts with reference to the transfer of the monies and securities to the bank under the trust agreement of December 17, 1929, and that a portion of such monies and securities consisted of unlawful profits taken by Dunnett, to which the minority stockholders were entitled.

The court awarded judgment against Cloud and Dunnett in favor of Arn for $2,410, in favor of S. N. Tideman and Eva C. Tideman for $2,072.60, in favor of Morrison for $2,265.40, and in favor of Periolat for $1,928, and decreed that such judgment should be a lien on the trust funds held by the bank under the trust agreement, and dismissed the bill as to the minority stockholders named in Group 2 without prejudice. Both plaintiffs and defendants have appealed from this decree.

Counsel for appellants in No. 960 assert that it is not the function of a corporation to deal in its own stock, and that the officers and directors of a corporation purchasing or selling the stock of its individual shareholders do not act in a trust or fiduciary relation to such stockholders; that the bill is without equity; that there was no proof of fraud and no evidence that the minority stockholders received less than the full value of their stock.

Counsel for cross-appellants in No. 961 contend that the award was inadequate, and that the court erred in dismissing the complaint without prejudice as to the minority stockholders named in Group 2.

Whether an officer or director in a corporation stands in the relation of trustee to a stockholder of such corporation with respect to his shares therein, so as to make it the duty of the officer or director when dealing with such stockholder with respect to his stock, to disclose all the knowledge which the officer or director possesses affecting the value of such stock, is a question upon which the authorities are sharply in conflict.

The rule sustained by the weight of authority is that, since dealing in its own stock is not a corporate function, the officer or director does not occupy a fiduciary relation to the stockholder with respect to his shares in the corporation, and that in buying or selling stock an officer or director may trade like an outsider, provided he does not affirmatively act, or speak wrongfully, or intentionally conceal facts with reference to it. Note 2.

In Bollstrom v. Duplex Power Car Co., 208 Mich. 15, 175 N. W. 492, 496, it is stated that "the reason for the rule thus stated is * * *: 'The books of the corporation are open to all stockholders alike, and each may inform himself of the condition of the company.' "

The minority rule is that an officer or director of a corporation is a trustee for individual stockholders with respect to their stock in the corporation, and may not deal with an individual stockholder with respect to such stock without giving him the benefit of any

Note 2.

Steinfeld v. Nielsen, 15 Ariz. 424, 139 P. 879; Bacon v. Soule, 19 Cal. App. 428, 126 P. 384, 387; Du Pont v. Du Pont (D. C. Del.) 242 F. 98, 136; Hooker v. Midland Steel Co., 215 Ill. 444, 74 N. E. 445, 106 Am. St. Rep. 170; Barth v. Fidelity & Columbia Trust Co., 188 Ky. 788, 224 S. W. 351; In re Shreveport Nat. Bank, 118 La. 664, 43 So. 270; Blabon v. Hay, 269 Mass. 401, 169 N. E. 268, 271; Buckley v. Buckley, 230 Mich. 504, 202 N. W. 955; Walsh v. Goulden, 130 Mich. 531, 90 N. W. 406; Dutton v. Barnes, 162 Minn. 430, 203 N. W. 414; Wann v. Scullin, 210 Mo. 429, 109 S. W. 688; Crowell v. Jackson, 53 N. J. Law, 656, 23 A. 426; Carpenter v. Danforth, 19 Abb. Prac. (N. Y.) 225; Id., 52 Barb. (N. Y.) 581; Krumbhaar v. Griffiths, 151 Pa. 223, 25 A. 64; Shaw v. Cole Mfg. Co., 132 Tenn. 210, 177 S. W. 479, L. R. A. 1916B, 706; White v. Texas Co., 59 Utah, 180, 202 P. 826; O'Neile v. Ternes, 32 Wash. 528, 73 P. 692; Bisbee v. Midland Linseed P. Co. (C. C. A. 8) 19 F. (2d) 24; Du Pont v. Du Pont (C. C. A. 3) 256 F. 129.

official knowledge that such officer or director possesses, which may affect the value thereof. Note 3.

Persuasive reasons may be given for applying the minority rule to officers and directors of a large corporate organization, where its stock is widely distributed and held in comparatively small units. The officers and directors of such a corporation, because of their official connection therewith, have a knowledge of its assets and liabilities, the condition of its business, its prospects for the future, and the value of the stock which it would be difficult if not practically impossible for the ordinary stockholder to obtain. In such a case it seems reasonable to require such officers or directors to make full disclosure of all pertinent facts when selling to, or purchasing individual stock from, a shareholder in the corporation.

However, it is our opinion that the question of which line of authorities announces the correct rule, is not presented on this record.

■ The contract of November 22, 1929, plainly contemplated that the Sunray Company should acquire all the stock of the Operators Company. It was entered into to effect a plan agreed to by the officers of the two corporations, whereby the Sunray Company was to acquire the assets of the Operators Company by purchasing all the stock of the latter. The contract repeatedly refers to the absorption of the Operators Company by the Sunray Company. While the minority stockholders were not bound by the plan, it was contemplated that their stock, with the aid of Cloud and Dunnett, could be obtained on the terms stated in the contract. All of the stock of the minority stockholders was acquired on those terms, except 111 shares held by Rooney and Herpich. While in form the plan provided for a sale by the stockholders of their individual stock, in substance it was a sale by the Operators Company of its assets to the Sunray Company. It was therefore in substance and effect a corporate transaction.

■ Corporate entity may be disregarded where not to do so will defeat public convenience, justify wrong, protect fraud, or defend crime. Pierce v. National Bank of Commerce (C. C. A. 8) 13 F.(2d) 40, 47; Boatright v. Steinite Radio Corp. (C. C. A. 10) 46 F.(2d) 385, 388; Hamilton Ridge Lumber S. Corp. v. Wilson (C. C. A. 4) 25 F.(2d) 592; Maloney Tank Mfg. Co. v. Mid-Continent Petroleum Corp. (C. C. A. 10) 49 F.(2d) 146, 147.

■ An officer or director of a corporation, while not a trustee in the technical sense of the term, occupies a fiduciary relation to its stockholders with respect to corporate transactions. Note 4.

An officer or director of a corporation, in any transaction where it is his duty to guard the interests of the corporation and its shareholders, may not directly or indirectly make any profit or acquire any personal benefit or advantage not also shared by the other stockholders, but must account for and yield to his beneficiary any such profit. Note 5.

---

Note 3.

Oliver v. Oliver, 118 Ga. 362, 45 S. E. 232; Bettendorf v. Bettendorf, 190 Iowa, 83, 179 N. W. 444, 945; Dawson v. National L. Ins. Co., 176 Iowa, 362, 157 N. W. 929, L. R. A. 1916E, 878, Ann. Cas. 1918B, 230; Lyon v. Carey, 111 Kan. 470, 206 P. 1109; Stewart v. Harris, 69 Kan. 498, 77 P. 277, 66 L. R. A. 261, 105 Am. St. Rep. 178, 2 Ann. Cas. 873; Jacquith v. Mason, 99 Neb. 509, 156 N. W. 1041, L. R. A. 1917F, 817; Poole v. Camden, 79 W. Va. 310, 92 S. E. 454, L. R. A. 1917E, 988; McMynn v. Peterson, 186 Wis. 442, 201 N. W. 272, 280. See also Strong v. Repide, 213 U. S. 419, 29 S. Ct. 521, 53 L. Ed. 853.

Note 4.

Heim v. Jobes (C. C. A. 8) 14 F.(2d) 29, 33; Davis v. Pearce (C. C. A. 8) 30 F.(2d) 85, 88; McCourt v. Singers-Bigger (C. C. A. 8) 145 F. 103, 107, 7 Ann. Cas. 287; Wheeler v. Abilene Nat. Bank (C. C. A. 8) 159 F. 391, 393–395, 16 L. R. A. (N. S.) 892, 14 Ann. Cas. 917; Heffern Co-Op. Consol. Gold M. & M. Co. v. Gauthier, 22 Ariz. 67, 193 P. 1021; Farwell v. Pyle-National Elec. Headlight Co., 289 Ill. 157, 124 N. E. 449, 10 A. L. R. 363; Stuart v. Larson (C. C. A. 8) 298 F. 223; Church v. Harnit (C. C. A. 6) 35 F.(2d) 499, 502; Ransome Concrete Mach. Co. v. Moody (C. C. A. 2) 282 F. 29, 34; Koehler v. Black River Falls Iron Co., 2 Black, 715, 720, 721, 17 L. Ed. 339; Jackson v. Ludeling, 21 Wall. 616, 22 L. Ed. 492; Fletcher's Cyc. Corporations (Perm. Ed.) vol. III, § 838.

Note 5.

Davis v. Pearce (C. C. A. 8) 30 F.(2d) 85, 88; Koehler v. Black River Falls Iron Co., 2 Black, 715, 720, 17 L. Ed. 339; Jackson v. Ludeling, 21 Wall. 616, 22 L. Ed. 492; Heim v. Jobes (C. C. A. 8) 14 F.(2d) 29, 33; Wheeler v. Abilene Nat. Bank Bldg. Co. (C. C. A. 8) 159 F. 391,

In Commonwealth T. Ins. & Trust Co. v. Seltzer, 227 Pa. 410, 76 A. 77, 79, 156 Am. St. Rep. 896, the whole of the capital of the A corporation was invested in certain real estate which the B corporation desired to purchase. The president of the A corporation entered into a contract with the agent of the B corporation, whereby the agent agreed to buy from the president a majority of the stock of the A corporation. Whereupon the president and a director of the A corporation collusively purchased enough of the stock in the A corporation to gain control thereof, and delivered it to the agent in pursuance of such agreement. Thereupon the real estate was sold and deeded to the B corporation for a price not found to be inadequate.

Certain of the stockholders, believing that the officers had so manipulated the sale of the property as to make a secret and illegal profit to themselves at the expense of their corporation, filed a bill against the president, directors, and other officers of the A corporation to recover such profits. The court said:

" 'The director of a corporation is a trustee for the entire body of stockholders, and by assuming the office he undertakes to give his best judgment in the interests of the corporation in all matters in which he acts for it, untrammeled by any hostile interest in himself or others; and all secret profits derived by him in any dealings in regard to the corporate enterprise must be accounted for to the corporation.' Bird Coal & Iron Co. v. Humes, 157 Pa. 278, 27 A. 750, 37 Am. St. Rep. 727. In scrutinizing the acts of such officers, the court will not heed mere forms when the substance which lurks behind them shows profits from a dealing in the corporation property.

"It is quite true that the profits in the present case were made to appear on the surface as not coming from the sale of the property of the corporation; but, as all the facts show that the purchaser only wanted the real estate, and not the control of the franchise of the corporation, there is little or no doubt that the profits paid to the two defendants were considered by the purchaser as part of the cost of the real estate. The purchaser wanted the property, and was willing to pay a price for it. The defendants knew this, and the facts justify the inference that the stock dealing was for the very purpose of diverting a part of that price from the corporation into their own pockets; and this, in a nutshell, is the theory upon which the case was decided. The conclusions of the court below were reached, and are here sustained, on the peculiar facts in this case, with a full and express recognition of the general rule that a stockholder, even though he be one of the managing officers of a corporation, has the right to buy and sell its stock and to keep any profits which he may thus acquire. But corporation officers cannot under cover of this rule carry through a transaction such as appears in this case without accounting for profits thereby diverted from their corporation."

The court held that the plaintiffs, as stockholders, could recover from the president and director their proportionate share of such profits, in an action brought in their own names.

Cloud and Dunnett arranged for a sale of the corporate stock of the Operators Company to the Sunray Company as a means whereby the Sunray Company would absorb the Operators Company and acquire its assets. The transaction, as we have stated, while in form a sale of stock, in substance and effect was a sale of the assets of the Operators Company to the Sunray Company, and a corporate act; and it was the duty of Cloud and Dunnett, as officers of the Operators Company to arrange such sale so that all the stockholders would be afforded the opportunity to share in the proceeds of such sale proportionately according to their stock holdings. See Horbach v. Coyle (C. C. A. 8) 2 F.(2d) 702. This they did not do. Instead, Cloud and Dunnett concealed from the minority stockholders the fact that they

394, 16 L. R. A. (N. S.) 892, 14 Ann. Cas. 917; Bisbee v. Midland Linseed Products Co. (C. C. A. 8) 19 F.(2d) 24, 27; Bird Coal & Iron Co. v. Humes, 157 Pa. 278, 27 A. 750, 752, 37 Am. St. Rep. 727; Gray v. Cornelius (D. C. Okl.) 40 F.(2d) 67, 69; Fletcher's Cyc., Corporations (Perm. Ed.) vol. III, § 884.

In Koehler v. Iron Co., supra, the court said:

"They (directors) hold a place of trust, and by accepting the trust are obliged to execute it with fidelity, not for their own benefit, but for the common benefit of the stockholders of the corporation. * * * 'The directors are the trustees * * * and the stockholders are the cestuis que trust, and have a joint interest in all the property and effects of the corporation, and no injury that the stockholders may sustain by a fraudulent breach of trust can, upon the general principles of equity, be suffered to pass without a remedy.' "

had sold their stock on more advantageous terms, and at a higher price than was to be offered to the minority stockholders, and led the latter to believe that they had accepted the same price and terms that were about to be offered to the minority stockholders.

The telegram of November 27, 1929, while not saying expressly that Cloud and Dunnett had accepted the same price and terms that were about to be offered to the minority stockholders, clearly carried that implication, and would have been so construed by a reasonable person. That Cloud and Dunnett intentionally deceived the minority stockholders named in Group 1, we have no doubt.

We conclude that Cloud and Dunnett by misrepresentation and improper concealment acquired a secret benefit, advantage, and profit out of a corporate transaction, for which they must account.

For 60,000 shares Cloud and Dunnett received $500,000 cash, bonds of the face value of $200,000, and stock of the market value of $8.12 or $292,320, aggregating $992,320. After deducting the commission of $35,000 paid by them, they received for their stock net $957,320, or $15.95 a share. The minority group received for 53,144 shares, cash $318,864, and Sunray Company stock at $8.12 or $431,529.28, an aggregate of $750,393.28, or $14.12 a share. The total net consideration received by both groups for 113,144 shares sold pursuant to the contract was $1,707,713.28, or $15.09 a share.

Therefore, if all the stockholders who joined in the plan had participated in the sale on an equal basis, the minority group would have received $15.09 a share for their stock, or 97 cents a share more than they actually received, and °the majority group would have received 86 cents a share less than they actually received.

■ The plaintiffs contend that they are entitled to recover the difference between what they actually received and what the majority group received for their stock. They assert that the price at which the majority group sold their stock fixed the value. Their position might be sound if this were an action at law for deceit. It is not that. It is an action against the officers and directors to have them account as trustees for a profit they made to the disadvantage of the minority stockholders. Neither has the minority group brought suit to rescind the sales of

their stock. On the contrary, they have ratified the sale. Under these circumstances the minority group has the right to have all of the proceeds of the sale distributed ratably among all the stockholders who joined in the plan for the sale; in proportion to their stock ownership, but they do not have a right to recover as in an action at law for loss of profit.

■ Plaintiffs' counsel here urge that this is a class suit, and that it was unnecessary to make proof for each individual member of the class. Whether the case could have been brought as a class suit under Equity Rule 38 (28 USCA § 723)` need not be decided. Arn, who instituted the suit, did not undertake to bring it as a class suit. He brought it in behalf of himself and others who might elect to join therein.

Plaintiffs below, whose names appear in the second group of minority stockholders, offered no proof. The general evidence showed that the telegram and letter were sent to them, and that they sold their stock upon the basis of the offer contained in the letter. There was no proof, however, that they did not know the express provisions of the contract of November 22, 1929, when they elected to accept the offer made by the Sunray Company. Absent this proof, we conclude that as to them the court did not err in dismissing without prejudice.

Of the 60,000 shares sold under the contract of November 22, 1929, Dunnett owned 29,119 shares. On these shares he received an unlawful profit of 86 cents a share, or $25,042.34. To that extent the funds in the hands of the bank were trust funds belonging to the minority stockholders.

The plaintiffs in Group 1 were entitled to awards against Cloud and Dunnett, as follows:

| | |
|---|---|
| Arn | $970.00 |
| Morrison | 911.80 |
| Periolat | 776.00 |
| Eva C. Tideman and S. N. Tideman | 834.20 |

—and to have those amounts adjudged a lien against the trust funds in the hands of the bank.

Remanded with instructions to modify the decree in accordance herewith. Each appellant will pay his own costs in this court.